IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **LSR, INC. t/a JERRY'S SEAFOOD,** : | |
| : | |
| Plaintiff, : | |
| : | **Civil Case No.:** 1:17-cv-3722-SAG |
| v. : | |
| : | |
| **SATELLITE RESTAURANTS INC.** : | |
| **CRABCAKE FACTORY USA,** : | |
| : | |
| Defendant. : | |

## MEMORANDUM ORDER

Plaintiff LSR, Inc. t/a Jerry's Seafood ("LSR") sued Defendant Satellite Restaurants Inc. Crabcake Factory USA ("Crabcake Factory") alleging trademark infringement and related claims. Presently pending is LSR's Motion for Sanctions for Spoliation.[1] ECF 44. Crabcake Factory opposed the Motion, ECF 52, and LSR filed a Reply, ECF 55. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, the Motion will be denied.

LSR is the registered owner of Trademark Registration No. 1744694, a word mark for use of "THE CRAB BOMB" to sell a baked crab entrée. The parties' dispute stems from Crabcake Factory's sale of its own entrée, using the term "crab bomb," during the 2016-2017 time frame. In the initial discovery requests LSR submitted to Crabcake Factory in April, 2019, ECF 44-1, LSR made several requests for information related to the number of "crab bombs" that were sold by Crabcake Factory and the profits it derived from those sales, including requests that Crabcake Factory:

- [I]dentify each person or entity who purchased goods from Defendant bearing the Infringing Marks, if known, and state the number of goods and the amount

---

[1] Crabcake Factory has also filed a Motion for Summary Judgment, ECF 43, which will be addressed separately.

of each sale.  Interrog. 17.

- [I]dentify the gross revenues relating to the sales of goods in connection with Defendant's use of the Infringing Marks. . .  Interrog. 18

- [I]dentify the profits that Defendant made from the sales of goods in connection with Defendant's use of the Infringing Marks, any projected profits for goods to be sold under the Infringing Marks, and the details of the method used in calculating the profits.  Interrog. 19.

- Produce all documents concerning the yearly dollar and unit volume of sales to date and projected future dollar and unit volume of sales for each of Defendant's goods bearing the Infringing Marks.  Request for Production ("RFP") 14.

- Produce all documents concerning the Defendant's gross and net profits from sales of Defendant's goods bearing the Infringing Marks.  RFP 16.

The only responsive sales data produced by Crabcake Factory listed its sales made between May 25, 2019 and December 27, 2019, well after the period in which the term "crab bomb" appeared on its menus.  ECF 44-7.  In its Second Supplemental Answer to Interrogatories, served on December 30, 2019, Crabcake Factory clarified that:

> Other than the past six to seven month period, Defendant has no sales data that breaks down sales of 8 oz. crabcakes (Defendant's larger variety) or sales of the other (smaller) sized crabcakes.  Beginning in approximately September of 2016, Defendant began using a point of sale ("POS") software/system called "Cake." Item-by-item sales data was not retained or generated by that POS system.  All that Defendant has previously needed and has ever used for sales tax purposes is a breakdown of food vs. beverage items (those two aggregated categories of sales).
>
> Prior to using Cake, Defendant used the POS system known as "Micros E7," which allows for a breakdown by item – for example, 8 oz. and 6 oz. crabcakes – only within 6 months on a stand-alone system like Defendant's . . . However, Defendant experienced even worse issues with Cake, so Defendant temporarily returned to Micros E7 in or about 2019, as it explored other options.

ECF 44-8 at 3.

LSR requests two forms of sanctions as a result of Crabcake Factory's alleged "spoliation" of the POS data regarding its sale of "crab bombs":  an adverse inference that the sales data would be harmful to Crabcake Factory's position, or an order precluding Crabcake Factory from arguing

that LSR cannot prove its damages.  ECF 44 at 7.  Trial courts have broad discretion to permit a jury to draw adverse inferences from a party's failure to present evidence, the loss of evidence, or the destruction of evidence.  *Goodman v. Praxair Services, Inc.*, 632 F. Supp. 2d 494, 520 (D. Md. 2009).  However, the inference "requires a showing that the party knew the evidence was relevant to some issue at trial and that his wilful conduct resulted in its loss or destruction."  *Id.* (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)).  In *Thompson v. United States Housing and Urban Development*, this Court elucidated three requirements for an adverse instruction regarding spoliation of evidence:

> [B]ecause it is an extreme sanction, three things must be shown to warrant an adverse inference instruction for spoliation of evidence: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a culpable state of mind; and (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

219 F.R.D. 93, 101 (D. Md. 2003) (citations omitted).

Even assuming *arguendo* that LSR could establish that Crabcake Factory had a culpable state of mind, LSR cannot establish the relevance of any sales data that is no longer available as a result of Crabcake Factory's conduct.  The term "crab bomb" appeared on Crabcake Factory's menu from September, 2016 until sometime in 2017.[2]  The uncontroverted evidence, described

---

[2] Crabcake Factory's 30(b)(6) representative, John Brooks, testified that "crab bomb" first appeared on its menu in September, 2016, when the Seafood House opened.  ECF 53-5 (Brooks Depo) at 30:2-32:18.  The end date of the usage is the subject of greater dispute.  Brooks testified that he removed the term from the menu "whenever I received the correspondence which was here, early summer '17, correspondence from Patrick [Buckley], May or June, 2017, would be when I heard from him and I took it off."  ECF 53-5 at 32:18-33:5.  LSR's corporate designee Philip Gainey claims that he saw "crab bomb" on the menu at Crabcake Factory on an unspecified date that he thinks may have been in September, 2017, or at least "later" in the season.  ECF 53-2 (Gainey Depo.) at 38:14-40:17.

above, is that Crabcake Factory was using the Cake system during that time frame, which did not retain item-specific sales data.[3]

Thus, even assuming that Mr. Buckler's letter on July 12, 2017 to Crabcake Factory should have triggered some duty to preserve its sales data in anticipation of litigation, there is no evidence that relevant sales data ever existed in any system. The Cake system did not include item-by-item sales information. ECF 44-8 at 3. The Micros E7 system only preserved data for six months, *id.*, and therefore any effort to run a report in July, 2017 would not have produced sales data from the period before September, 2016, when the Micros E7 system had been last used. A party cannot be held responsible for spoliating evidence that never existed.

This Court agrees with LSR that Crabcake Factory's responses and testimony during the course of discovery, regarding its use of various systems for tracking sales data, were somewhat less than clear. A lack of precision, however, does not entitle the opposing party to an adverse inference or any other spoliation sanction. LSR's Motion for Sanctions for Spoliation, ECF 44, is therefore denied, and no award of fees and costs is appropriate.


Dated: August 18, 2020                           /s/
                                                 Stephanie A. Gallagher
                                                 United States District Judge

---

[3] LSR points out that Crabcake Factory originally stated that it ceased using Cake and switched back to Micros in early Summer 2017, before later providing a second timeline in which it stopped using Cake in 2019. ECF 44 at 8. Crabcake Factory asserts that the Summer 2017 date was a mistake that it corrected in its Second Supplemental Answers to Interrogatories. ECF 52 at 11. LSR does not provide any evidence to the alternative, beyond a deposition statement by Crabcake Factory's corporate designee answering broadly that one could run a Micros report "on any date prior to today," ECF 44 at 8, which does not shed light on when Crabcake Factory switched from Cake to Micros.