IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **LSR, INC. t/a JERRY'S SEAFOOD,** | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. 1:17-cv-03722-SAG |
| | * | |
| **SATELLITE RESTAURANTS INC.** | * | |
| **CRABCAKE FACTORY USA,** | * | |
| | * | |
| Defendant. | * | |
| | * | |

## MEMORANDUM OPINION

Plaintiff LSR, Inc. t/a Jerry's Seafood ("LSR") filed suit against Satellite Restaurants Inc. Crabcake Factory USA ("Crabcake Factory"), alleging trademark infringement and unfair competition relating to Crabcake Factory's sale of an entrée called a "crab bomb." Currently pending is CrabCake Factory's Motion for Summary Judgment. ECF 43, 43-1 (collectively, "the Motion"). LSR opposed the Motion, ECF 53, and Crabcake Factory filed a Reply, ECF 54. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Crabcake Factory's Motion will be granted in part and denied in part.

### I.   FACTUAL BACKGROUND

The facts described herein are viewed in the light most favorable to LSR, as the non-moving party. Since the registration date of January 5, 1993, LSR has been the owner of Trademark Registration No. 1744694 ("the Crab Bomb Trademark"), which registered the word mark "THE CRAB BOMB" for use in connection with the sale of a baked crab entrée. ECF 53-1. In 2003, Philip Gainey ("Gainey") purchased LSR from its prior owners, who were his relatives. ECF 53-2 (Gainey Depo.) at 8:13-9:19. At that time, LSR operated a restaurant in Lanham, Maryland, trading as "Jerry's Seafood." *Id.* at 16:16-17. That location ceased operations in July

of 2015, *id.* at 16:16-19, and LSR has had no revenue-generating business since that time. ECF 43-2 at 77:10-78:5.

At various times, three other corporate entities (Tru Blue, LLC ("Tru Blue"), Gemini Ventures, LLC ("Gemini Ventures"), and Wavz, LLC) have owned and operated "Jerry's Seafood" restaurants in other locations, specifically Bowie, Maryland, Lewes, Delaware, and Annapolis, Maryland. ECF 53-2 at 14:3-16:12; 17:3-9. The Annapolis location closed in 2010. *Id.* at 16:11-14. The Bowie and Lewes restaurants remain in business. *Id.* at 14:3-10. LSR has no corporate or financial relationship with Tru Blue (which owns and operates the Bowie location) or Gemini Ventures (which owns and operates the Lewes location). *Id.* at 18:6-18. However, Gainey, personally, is one of ten joint owners of Tru Blue. *Id.* at 18:19-19:12.

Between 2003 and 2005, LSR entered into a written agreement with Gemini Ventures, under which Gemini Ventures made a one-time, lump sum payment of $100,000 to LSR for use of the Crab Bomb Trademark.[1] *Id.* at 23:17-25:7. Gemini Ventures has made no other payments to LSR for use of the Crab Bomb Trademark since that time, and the payment amount was not linked in any way to Gemini Ventures's sales derived from the trademark. *Id.* at 24:21-25:3. Similarly, in 2008, LSR entered into an agreement with Tru Blue (either oral or in writing) under which Tru Blue made a single lump sum payment of $150,000 to LSR for use of the Crab Bomb Trademark. *Id.* at 20:21-23:10. Again, the one-time payment was not dependent on Tru Blue's sales of the crab bomb product, and no further payments have been made by Tru Blue to LSR for use of the Crab Bomb Trademark. *Id.* at 23:5-16.

---

[1] The alleged written agreement between Gemini Ventures and LSR was not produced by LSR in discovery.

Gainey testified that, over the years, LSR sent some number of "cease and desist" letters to other restaurants, when it learned that the restaurants had items on their menu infringing the Crab Bomb Trademark.[2]  *Id.* at 27:19-30:11.  LSR learned of those instances when its customers notified Gainey that another restaurant is selling a crab bomb, or when Gainey's nephew, who manages Jerry's Seafood social media accounts, discovered the use. *Id.* at 31:15-32:2.  Gainey and LSR do not engage in regular internet search activity to monitor other establishments' use of the term "crab bomb," and do not contact every restaurant when they discover the use of the term on a menu.  ECF 43-6 at 83:3-85:13.

In 2016-2017, a customer of LSR's in Lanham, who also owns a residence in Ocean City, sent Gainey a picture of the menu from the Crabcake Factory, which described its "crab bomb," and said, "I thought you had this trademarked." ECF 53-2 at 32:16-21; 33:11-15; 35:5-8.  Another customer also called Gainey about the Crabcake Factory's menu item, *id.* at 34:6-35:8, and an investor in Tru Blue asked Gainey whether "we" had licensed Crabcake Factory to use the mark, *id.* at 35:10-36:1.[3]  In response, on June 7, 2017, an attorney for LSR sent a "cease and desist" letter to John J. Brooks of Crabcake Factory.  ECF 53-4 at 1-2.  The attorney sent a second letter on July 12, 2017, which noted that Brooks had "failed to respond," and alleged that "the Crabcake Factory continues to use 'The Crab Bomb' trademark in association with the sale, marketing, distribution, promotion or other identification of its products, or services."  *Id.* at 3.

On December 18, 2017, LSR filed the instant action.  ECF 1.

---

[2] No such cease and desist letters were produced in discovery.

[3] Tru Blue is not a plaintiff in this case and, from the court record, does not appear to have had any protectible interest in the trademark.

3

## II.     LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010)

(unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### III. ANALYSIS

LSR's Complaint contains four counts: Trademark Infringement and False Designation of Origin Under 15 U.S.C. § 1125(a) (Count One); Trademark Infringement under 15 U.S.C. § 1114 (Count Two); Common Law Trademark Infringement (Count Three); and Common Law Unfair Competition (Count Four). Each count is addressed below.

#### A. Trademark Infringement (Counts One, Two, and Three)

LSR alleges trademark infringement in violation of 15 U.S.C. § 1114, common law trademark violation, and a violation of the "false designations of origin" subsection of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). Section 1125(a)(1)(A) prohibits use of a "device" that is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A). The test for a false designation of origin is "essentially the same as the test for trademark infringement." *JFJ Toys, Inc. v. Sears Holdings Corp.,* 237 F. Supp. 3d 311, 327 (D. Md. 2017). In addition, the elements to show statutory trademark infringement are the same as those to establish common law trademark infringement. *Resorts of Pinehurst, Inc. v. Pinehurst National Corp.,* 148 F.3d 417, 422 (4th Cir. 1998) (quoting 3 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 23:1, p. 23-26) ("'Likelihood of confusion' is the basic test of both common-law trademark infringement and federal statutory trademark infringement.").

Thus, with respect to Counts One through Three, LSR must show:

> (1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred "in commerce"; (4) that the defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers.

*People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001) (citing 15 U.S.C. §§ 1114, 1125(a); *Lone Star Steakhouse & Saloon v. Alpha of Virginia*, 43 F.3d 922, 930 (4th Cir. 1995)).

The only element in dispute in this case is the last element, whether Crabcake Factory "used the mark in a manner likely to confuse consumers." Crabcake Factory correctly notes that LSR has no evidence of any actual consumer confusion. ECF 43-1 (citing LSR Interrogatory Answers at 9). The absence of actual confusion, though, is not dispositive, but is just one of many factors to be considered in determining the likelihood of confusion engendered by use of a mark. Specifically, the Court should weigh factors such as:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

*Entrepreneur Media, Inc. v. JMD Entm't Grp., LLC*, 958 F. Supp. 2d 588, 595 (D. Md. 2013) (citing *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012)). The nine factors "are not always weighted equally, and not all factors are relevant in every case." *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 259–60 (4th Cir. 2007); *see also Rosetta Stone, Ltd.,* 676 F.3d at 154 ("This judicially created list of factors is not intended to be exhaustive or mandatory.").

6

Ultimately, there is a genuine issue of material fact as to whether LSR can establish a likelihood of confusion. On one hand, LSR has proffered some evidence of customers and business associates who, while not describing actual confusion, at least inquired as to whether there is a relationship between LSR and Crabcake Factory. LSR's former restaurant and Crabcake Factory are both located in Maryland, albeit in different and somewhat distant areas of the state. The titles of the two dishes are near-identical, and they are similar to one another because they identify larger baked entrées made from lump crab meat.

On the other hand, LSR's Crab Bomb Trademark is not conceptually or commercially strong as used in the marketplace. On the scale of strength ranging from arbitrary to generic, the Crab Bomb trademark appears to be suggestive. ECF 43-1 at 15 (Crabcake Factory's assertion that it is either descriptive or suggestive); ECF 53 at 7 (LSR's assertion that it is suggestive). As the Fourth Circuit has explained,

> [Courts] have said that a word or figure is descriptive if it "identifies a characteristic or quality of an article or service," and a suggestive term is "one which 'suggests rather than describes,' some characteristic of the goods to which it is applied and requires the consumer to exercise his imagination to reach a conclusion as to the nature of these goods." *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1183 (5th Cir.1980), cert. denied, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981).

*Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1528 (4th Cir. 1984). The distinction between descriptive and suggestive marks is imprecise. "The problem of making the proper determination of whether the mark is descriptive or suggestive, has caused a number of courts, when confronted with the problem, to conclude that under the circumstances it is especially prudent 'to give due respect to the determination of the Patent Office if the distinction [between the two ideas] is to be drawn in a consistent manner.'" *Id.* (quoting *Union Carbide Corp. v. Ever-Ready*, 531 F. 2d 366, 379 (7th Cir. 1976)).

Because the Patent and Trademark office granted registration to LSR in this case, and there is no evidence that it required proof of secondary meaning, it can be inferred that it deemed the Crab Bomb Trademark to be suggestive. However, the mark appears to have at least some descriptive components, because "crab" obviously describes the content of the dish. "Bomb," while susceptible to being viewed as suggestive, typically refers to size and strength. "When a mark incorporates generic or highly descriptive components, customers are less likely to think that other uses of the common element emanate from the mark's owner." *United States Patent and Trademark Office v. Booking.com B.V.*, 140 S.Ct. 2298, 2307 (2020). Regardless, assuming it constitutes a suggestive mark, the Crab Bomb Trademark enjoys some degree of trademark protection. Its protection is not absolute, however, and its strength must also be considered. The Fourth Circuit has stated:

> As we explained in *CareFirst*, the suggestive "designation does not resolve the mark's conceptual strength." 434 F.3d at 270. Rather, "'the frequency of prior use of [a mark's text] in other marks, particularly in the same field of merchandise or service,' illustrates the mark's lack of conceptual strength." *Id.* (alteration in original) (quoting *Pizzeria Uno*, 747 F.2d at 1530–31). This is so because consumers are unlikely to associate a mark with a unique source if other parties use the mark extensively. *Id.*

*Grayson O Company v. Agadir International LLC*, 856 F.3d 307, 315 (4th Cir. 2017). As actually used in the marketplace, the conceptual and commercial strength of the Crab Bomb Trademark is weak, because LSR was not engaged in the restaurant business during the relevant time frame, it maintained no evident control over the allegedly "licensed" use of the trademark in the "Jerry's Seafood" restaurants operated by Gemini Ventures and True Blu, and it did not actively police the use of the trademark by other entities, either by running regular internet searches to ferret out infringement or by filing trademark infringement actions, ECF 43-2 at 83:13-85:13. Crabcake Factory has provided a diverse offering of restaurant menus and recipe sites, found on the internet,

all marketing a "crab bomb." ECF 43-6. The use of the mark by sources other than LSR, and the lack of use by LSR during the relevant period, diluted the conceptual and commercial strength of the Crab Bomb Trademark as a way to associate "crab bomb" with LSR as the unique source.

Turning to some of the other factors, LSR conceded that it engaged in no print or media advertising, on Maryland's Eastern Shore or in Maryland in general. ECF 43-2 at 86:4-87:20. As noted above, LSR has proffered no evidence of actual confusion by consumers, and has no evidence that Crabcake Factory was aware of LSR's trademark (or LSR's existence) or had any intent to infringe LSR's trademark by naming its entrée "crab bomb." The evidence in the record suggests that Crabcake Factory's crabcake, which was temporarily marketed in its larger size as a "crab bomb," was an award-winning product, ECF 43-13 at 58:13-59:10, which diminishes the notion that LSR would suffer some reputational harm if confusion were to occur. Finally, the fact that LSR was not engaged in any business at the time of the alleged infringement reduces the likelihood of consumer confusion as to the product's origin. *Cf. Microsoft Corp. v. Grey Computer,* 910 F. Supp. 1077, 1088 (D. Md. 1995) (quoting *Microsoft Corp. v. CMOS Tech., Inc.,* 872 F. Supp. 1329, 1335 (D. N.J. 1994) ("[W]hen the trademark owner and the alleged infringer are in direct competition, it is rarely necessary to look beyond the mark itself to decide if there has been an infringement.")). LSR may face an uphill battle, on these facts, to convince a jury or other factfinder of a likelihood of confusion. However, taking facts in the light most favorable to LSR, as this Court must in considering a summary judgment motion, there remains a genuine issue of material fact as to whether the multi-factor standard can be met.

Crabcake Factory also alleges that, at least with respect to Counts One and Three, LSR lacks standing to sue, because it cannot establish that it suffered any "injury in fact" from Crabcake Factory's actions. ECF 43-1 at 8-9, 19-21. Crabcake Factory cites no cases, and this Court has

not found any, that require a registered trademark owner to prove its continued personal use of the trademark, or to prove actual damages, in order to bring such claims.[4] *See 7-Eleven, Inc. v. McEvoy*, 300 F. Supp. 2d 352, 356–57 (D. Md. 2004) (party who prevails on the merits of an infringement claim is entitled to "at least nominal damages.").

Finally, Crabcake Factory contends that LSR abandoned its trademark as a result of its "naked licensing" of the mark to Gemini Ventures and Tru Blue. ECF 43-1 at 18–19. "'Naked licensing' occurs when the licensor fails to exercise adequate quality control over the licensee." *Beach Mart, Inc. v. L&L Wings, Inc.*, 784 Fed. App'x. 118, 127 (4th Cir. 2019) (quoting *FreecycleSunnyvale v. Freecycle Network,* 626 F.3d 509, 515 (9th Cir. 2010). In those circumstances, the trademark no longer functions as "a symbol of quality and a controlled source," and it can therefore be subject to cancellation of the registration. *Id.*

This Court concludes that a genuine issue of material fact remains as to whether the undocumented, one-time transactions with Gemini Ventures and Tru Blue constituted "licenses," and, if so, whether LSR continued to exercise any degree of control over those entities' uses of the Crab Bomb Trademark. The evidence presented to the Court did not explore Gainey's degree of involvement, as one of many partial owners, with the management of Tru Blue, or any quality control he exercised over the products Tru Blue sold at "Jerry's Seafood" in Bowie. Even assuming that Gainey has some degree of involvement, there may be no basis for attributing his personal involvement to that of LSR, which allowed its corporate charter to lapse in October, 2015 through the duration of the relevant period. ECF 9-1. Setting the relationship with Tru Blue aside,

---

[4] Crabcake Factory cites to a single case, *Shoney's Inc. v. Schoenbaum*, 686 F. Supp. 554, 564 (E.D. Va. 1988), for the proposition that proof of harm is required. ECF 43-1 at 19; ECF 54 at 4. However, in addition to being non-binding precedent, the *Shoney's* case does not appear to address that issue, and certainly does not present facts akin to those in this case.

10

it appears, based upon Gainey's uncertainty as to whether Gemini Ventures even still operates the Lewes location, that any degree of control or interaction with that purported licensee is minimal or nonexistent. *See* ECF 53-2 at 14:18-21 ("Q: What entity operates the location in Lewes, Delaware? A: If it's still the same, it would be Gemini Ventures."); 16:3-6 ("Q: So you have nothing to do and LSR, Inc., has nothing to do with the Lewes, Delaware location of Jerry's Seafood? A: That's correct."). However, given the somewhat limited record before the Court on these issues, the determination of whether LSR's relationship with Gemini Ventures or Tru Blue constitutes abandonment by "naked licensing" presents issues of fact that are best reserved for trial.

### B. Unfair Competition

Count Four is a state common law claim for unfair competition. There are no specific elements required to establish unfair competition under Maryland law. Instead, "each case is a law unto itself, subject, only, to the general principle that all dealings must be done on the basis of common honesty and fairness, without taint of fraud or deception." *Balt. Bedding Corp. v. Moses*, 182 Md. 229, 237 (Md. 1943). Thus, a court analyzes the particular facts of each case to determine whether a defendant's acts amount to unfair competition. In general, "[u]nfair competition is 'damaging or jeopardizing another's business by fraud, deceit, trickery or unfair methods of any sort.'" *Thompson v. UBS Financial Servs., Inc.*, 443 Md. 47, 60 (2015) (quoting *Balt. Bedding Corp.*, 182 Md. at 237). Maryland courts have suggested that the essential element is "deception, by means of which the goods of one dealer are passed off as the goods of another, and the seller receives the profit which he would not have received except for such deception." *GAI Audio of New York, Inc. v. Columbia Broadcasting System, Inc.*, 27 Md. App. 172, 192 (1975). The Maryland Court of Appeals "has preserved a high degree of flexibility in the law of unfair

competition." *Delmarva Sash & Door Co. of Maryland v. Andersen Windows, Inc.*, 218 F. Supp. 2d 729, 733 (D. Md. 2002)

In the specific context of trademark infringement claims, other judges in this Court have equated the elements of trademark infringement with the elements of unfair competition under Maryland law. *Sterling Acceptance Corp. v. Tommark, Inc.,* 227 F. Supp. 2d 454, 460 (D. Md. 2002) ("The test for trademark infringement and unfair competition under state law is the same as the test under the Lanham Act."); *Microsoft Corp. v. Grey Computer,* 910 F. Supp. 1077, 1088 (D. Md. 1995). Yet to mechanically follow suit would be to overlook a critical assumption that underlies those cases but is missing here: unlike those other plaintiffs, LSR was not engaged in any business conduct during the time of Crabcake Factory's alleged infringing actions. Thus, there existed no trade or commerce for Crabcake Factory to unfairly compete for and divert away from LSR in the first place. LSR characterizes itself as "a holding company for Jerry's Seafood's trademark portfolio," ECF 53, but in this capacity, it did not engage in any market activity at all during the relevant period. Uncontroverted evidence establishes that LSR closed its only restaurant location in 2015, forfeited its corporate charter in October, 2015, was not engaged in efforts to license the Crab Bomb Trademark, and did not derive any continuing revenue from its "licensing agreements" with Gemini Ventures and Tru Blue.

It defies logic to suggest that a plaintiff can recover for unfair competition when it does not conduct business and thus does not compete with *anyone*, let alone the defendant.[5] Unlike the

---

[5] To be sure, actual competition is not required to prove unfair competition, insofar as the parties need not be direct competitors with one another. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1392 (2014). Yet this logic does not stretch so far as to allow a claim of unfair competition to stand where there exists no competition at all by virtue of plaintiff's withdrawal from the marketplace. Unfair competition claims are fundamentally about "the right of a business man. . . to have full benefit of the reputation he has established, a part of which is the trade that, without interference, would normally flow to him." Edward Rogers,

trademark and Lanham claims at issue in this case, which merely require an inquiry into the consumer confusion without necessarily showing harm to plaintiff's business, the core of an unfair competition claim centers on whether the plaintiff's business was "damaged or jeopardized," *Thompson,* 443 Md. at 60. For damage to plaintiff's business to occur, it follows that they must be actually engaged in business in the first place. Here, even when viewing the facts in the light most favorable to LSR, there was no risk of Crabcake Factory's actions in 2016-2017 "damaging or jeopardizing" LSR, because one cannot engage in unfair competition vis-à-vis an entity that is not operating in the competitive marketplace at all.

To the extent LSR attempts, by referring to itself under the trade name it had used to operate its restaurant, to conflate its business with the two "Jerry's Seafood" restaurants that remained in business in 2016-2017, its claims cannot lie. Despite Gainey's partial ownership interest in Tru Blue, there is no evidence that LSR, the corporate entity, had any interest in the Bowie restaurant, such that its individual interests could have been harmed if Crabcake Factory's infringement affected the Bowie establishment's sales. LSR is the only Plaintiff in this case, not Gainey or Tru Blue. Accordingly, as to LSR's unfair competition claim, there is no genuine issue of material fact, and summary judgment is warranted.

## IV. CONCLUSION

For the reasons set forth above, Defendant Crabcake Factory's Motion for Summary Judgment, ECF 43, will be GRANTED as to Count Four and DENIED as to Counts One through Three. A separate Order follows, which will include a date for a telephonic conference to discuss further scheduling.

---

Book Review, 39 YALE L.J. 297, 299 (1929). Here, there was no such trade that would normally flow to LSR, for it was not engaged in any business efforts whatsoever.

Dated: August 20, 2020

/s/

Stephanie A. Gallagher
United States District Judge